UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CARLTON L. MYRICK,

     Plaintiff,

v.                                          CASE NO. 8:06-CV-1081-T-EAJ

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

     Defendant.

_____ /

## FINAL ORDER

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income payments ("SSI") under the Act.[2]

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed, the administrative record, and the pleadings and memoranda submitted by the parties in this case.

In an action for judicial review, the reviewing court must affirm the decision of the

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Therefore, pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Dkt. 19).

Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405(g) (2003). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979) (citations omitted).

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

## I.

Plaintiff filed an application for DIB and SSI payments on March 29, 2004, claiming an onset of disability beginning December 20, 2003, due to low back, left knee, and shoulder impairments along with a history of special education, speech therapy, decreased memory, and depression. (T 52, 71, 264) Plaintiff's claim was denied initially and upon reconsideration. During a December 21, 2005 administrative hearing, Plaintiff alleged a closed period of disability from onset on December 20, 2003 through April 11, 2005. Following the hearing, the ALJ denied Plaintiff's claim in a decision dated January 27, 2006. (T 20-31) The Appeals Council declined to review the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (T 5-7)

The ALJ found that Plaintiff had not engaged in substantial gainful activity from December 20, 2003 through April 11, 2005 but that Plaintiff was not eligible for DIB and SSI because he was not disabled at any time through the ALJ's decision. (T 30, 31) Plaintiff filed a timely petition for judicial review of the Commissioner's denial of benefits (Dkt. 1). Plaintiff has exhausted all administrative remedies and the Commissioner's decision is ripe for review under the Act.

Plaintiff, forty-eight years old at the time of the administrative hearing, has a eleventh-grade education.[3] (T 77, 296-97) Plaintiff has previously been employed as boat detailer, dietary aide, and construction worker, which employment required medium to very heavy physical exertion. (T 72, 300) Following the administrative hearing, the ALJ found that Plaintiff has degenerative disc disease of the lumbar and cervical spine, left knee pain, left shoulder pain, phonological disorder, limited intellectual functioning, depression, personality disorder, and a history of drug addiction and alcoholism.  (T 30) The ALJ determined that the above impairments are severe but concluded that Plaintiff's impairments or combination of impairments do not meet or medically equal an impairment listed in the Listing of Impairments found in Appendix 1, Subpart P of Regulations No. 4. (Id.)

The ALJ held that Plaintiff was unable to perform his past relevant work between December 20, 2003 and April 11, 2005, but that Plaintiff had the residual functional capacity ("RFC") to perform at least a significant range of light exertional work.[4] (T 29, 30) Specifically, the ALJ found

---

[3] Plaintiff claims that he had special education and speech education courses, and that he is illiterate.

[4] Light work, defined at 20 C.F.R. §§ 404.1567(b), 416.967(b), involves the lifting of not more than twenty pounds occasionally with frequent lifting and carrying of objects weighing up to ten pounds.  The regulations further provide: "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of

that Plaintiff's RFC encompasses the following limitations:

> [O]ccasional bending, stooping, climbing, crouching, or balancing, and could avoid climbing and jobs requiring communication with the public (but he could tolerate occasional contact with the public) or doing mathematical calculations. [Plaintiff] had sufficient concentration and attention to learn tasks by demonstration or oral instructions only, and could understand, remember, and follow simple instructions. He could perform routine, repetitive tasks, but is limited to 1-2 step tasks. He could tolerate only low stress, defined as involving only occasional decision-making, occasional changes in the work setting, and occasional on-the-job judgment.

(T 30)  Further, the ALJ found that Plaintiff was "a younger individual between the ages of 45 and 49" during the alleged period of disability. (Id.)

Relying on the testimony of a vocational expert ("VE") in response to hypothetical questions which incorporated these limitations, the ALJ concluded that Plaintiff could perform jobs such as hand packer, cleaner/janitor, and small parts assembler, even when assuming that Plaintiff is illiterate, has no transferable skills, and cannot perform his past relevant work.  (T 31) In reaching the conclusion that Plaintiff had not been under a disability as defined by the Act at any time through the date of the decision, the ALJ held that Plaintiff's statements regarding his limitations were not wholly credible. (T 30)

The medical evidence has been summarized in the decision of the ALJ and will not be repeated here except as necessary to address the issues presented.

## II.

Plaintiff alleges the Commissioner erred by failing to consider the combined effect of all of Plaintiff's impairments and subjective symptoms. Specifically, Plaintiff argues that (1) the ALJ

----

performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. §§ 404.1567(b), 416.967(b).

understated some of Plaintiff's impairments while omitting other physical and mental impairments;(2) the ALJ failed to mention Plaintiff's treatment for asthma or include any asthma-related restrictions in the hypotheticals to the VE; and (3) the VE's identification of jobs that Plaintiff could perform was not based on substantial evidence.  Further, Plaintiff argues that new evidence submitted to the Appeals Council warrants remand.

**A.**      Plaintiff first alleges that the ALJ failed to consider the combined effect of all of Plaintiff's impairments. Specifically, Plaintiff argues that the ALJ omitted Plaintiff's bilateral hand impairments and failed to mention Plaintiff's treatment for asthma or pose hypotheticals to the VE that included asthma-related restrictions. Further, Plaintiff argues that the ALJ did not fully consider Plaintiff's mental impairment and the effects thereof. Thus, Plaintiff contends, the VE's identification of three jobs in the national economy that Plaintiff could perform was not based on substantial evidence but rather, resulted from incomplete questioning by the ALJ.

The ALJ must consider each alleged impairment and "state the weight accorded [to] each item of impairment evidence and the reasons for his decisions on such evidence." Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986).  In addition, the ALJ must explain whether the impairments are severe singularly and in combination. Id.  The combined effect of impairments must be considered even if any of the impairments considered separately are not "severe". Hudson v. Heckler, 755 F.2d 781, 785-86 (11th Cir. 1985). The failure to comply with these requirements results in a remand. Gibson, 779 F.2d at 623.

Plaintiff suffered injuries from a December 2003 car accident. George Besser, M.D. ("Dr. Besser") initially noted Plaintiff's complaints of headache, pain in the neck, left shoulder, and lower

back, and numbness and pain in both hands. (T 155) A joint examination revealed positive Tinel's[5] and Phalen's signs.[6] (T 159) Dr. Besser's impressions included pain in both hands and possible carpal tunnel syndrome. (T 160)

In February 2004, Plaintiff complained of numbness in both hands to Theodore P. Vlahos, M.D. ("Dr. Vlahos"), an orthopedic surgeon. (T 197) However, Plaintiff denied radiating pains in the upper extremities and any wrist or hand pain. (Id.) Dr. Vlahos found no tenderness in either wrist, no Tinel's symptoms, but a positive Phalen's on the right wrist for median nerve symptoms. (T 199) Dr. Vlahos' impressions included possible carpal tunnel syndrome in the right hand. (T 201)

Plaintiff argues that the ALJ omitted Plaintiff's diagnoses of carpal tunnel syndrome, numbness in his hands, and positive clinical findings of Tinel's and Phalen's signs (Dkt. 14 at 16). However, there was no actual diagnosis of carpal tunnel syndrome; both Dr. Besser and Dr. Vlahos noted only "possible" carpal tunnel syndrome. (T 160, 201) In addition, the ALJ's opinion discussed both Dr. Bresser's and Dr. Vlahos' examination of Plaintiff. (T 28) The ALJ stated that Dr. Bresser indicated a variety of diagnoses, including pain in both hands and possible carpal tunnel syndrome. (Id.) The ALJ further noted that Dr. Vlahos' diagnoses mirrored Dr. Bresser's. (Id.) Contrary to Plaintiff's argument, the ALJ did not omit from her analysis the consideration of Plaintiff's possible hand impairments.

Similarly without merit is  Plaintiff's argument that the ALJ erred by failing to mention

---

[5] Tinel's is "a tingling sensation in the distal end of a limb when percussion is made over the site of a divided nerve. It indicates a partial lesion or the beginning regeneration of the nerve." Dorlund's Illustrated Medical Dictionary 1206 (26th ed., W.B. Saunders Co. 1985).

[6] Phalen's is a physical text involving flexion of the fully extended hand at the wrist and aids in the diagnosis of carpal tunnel syndrome. Clayton L. Thomas, M.D., Taber's Cyclopedic Medical Dictionary 1957-58 (18th ed., F.A. Davis Co. 1997).

Plaintiff's treatment for asthma or include any asthma-related restrictions in her hypotheticals to the VE.   An April 16, 2004 encounter record from the Greenwood Community Health Resource Center states that Plaintiff was assessed with asthma and back pain. (T 210) Plaintiff was prescribed Proventil spray for asthma. (Id.) In June 2004, Brian Patrick, M.D. ("Dr. Patrick") evaluated Plaintiff's back pain. Dr. Patrick noted that Plaintiff's past medical history included asthma and that Plaintiff was taking Proventil one to two times per day. (T 216) Dr. Patrick assessed Plaintiff with "moderate persistent asthma as per clinical history" and instructed Plaintiff in the proper use of an inhaler. (T 217) Further, in February 2004, Dr. Vlahos characterized Plaintiff's asthma as "slight". (T 197) Additionally, the medical evidence reveals that Plaintiff smoked even though allegedly suffering from asthma. (T 155, 214, 216)

Plaintiff fails to point to any medical evidence in the record which demonstrates any work-related limitations or restrictions due to Plaintiff's asthma.[7] Indeed, the medical evidence does not support such a finding. Thus, the ALJ's decision not to consider Plaintiff's asthma as an additional limitation was not in error. Further, the ALJ is only required to include the restrictions he recognizes in the hypothetical question to the VE.  See Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994). Therefore, the court finds that the ALJ did not err by failing to include asthma-related restrictions in her hypotheticals to the VE.

Plaintiff further argues that the ALJ failed to fully and fairly consider the effects of Plaintiff's mental impairment. This argument is without merit as Plaintiff's argument is wholly conclusory and unsupported (Dkt. 14 at 18). Notwithstanding, the ALJ thoroughly discussed the medical evidence

---

[7] In fact, the ALJ noted that the record is devoid of any treating or examining medical source opinion that delineates any work-related capacities or limitations. (T 27) The only record evidence of work-related restrictions is temporary disability work releases from December 26, 2003 to May 2004, a period of less than six full months. (Id.)

7

relating to Plaintiff's mental impairment, including the possibility of phonological disorder (articulation problems), chronic organic mental disorder, mental retardation, affective disorder, personality disorder, and depression. (T 24-27) The ALJ found Plaintiff's phonological disorder, limited intellectual functioning, depression, and personality disorder "severe" (T 30) and included mental limitations in her hypothetical to the VE as follows:

> And for purposes of this hypothetical . . . would have sufficient attention and concentration to understand and remember simple instructions and performing routing and repetitive tasks, limited to 1, 2 step tasks. They should be tasks which could be learned by demonstration only or oral instructions. If in addition, the individual should be in a low-stress environment, which would be defined as only no more than occasional decision making or occasional changes in a job setting and also with only occasional judgment required on the job. Interaction with the general public should be no more than occasional and the person should avoid jobs requiring communication with the public or doing math calculations. Would the individual be able to do any of the claimant's past work or any other work?

(T 307-08) Plaintiff's argument that the ALJ failed to fully consider Plaintiff's mental impairment fails in light of the ALJ's thorough review of the medical evidence and inclusion of mental restrictions in her hypothetical to the VE.

Finally, contrary to Plaintiff's argument, there is substantial evidence to support the assumptions in the ALJ's hypothetical questions and the ALJ was justified in relying on the testimony of the VE in identifying jobs in the national economy that Plaintiff can perform consistent with his limitations. See Pendley v. Heckler, 767 F.2d 1561, 1562-63 (11th Cir. 1985). Once a claimant proves that he cannot return to his past relevant work, the burden shifts to the Commissioner to show that the claimant can perform other jobs that are significant in number in the national economy. Gibson v. Heckler, 762 F.2d 1516, 1518-19 (11th Cir. 1985). The ALJ can satisfy his burden of providing evidence of other work in the national economy that a claimant can perform through VE testimony. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Once the ALJ

articulates specific jobs that a claimant can perform, the claimant must show that he could not

perform those jobs in order to prove disability. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999),

cert. denied, 529 U.S. 1089 (2000).

Plaintiff argues that the ALJ assessed Plaintiff at a medium work residual functional capacity

(as opposed to light) in finding three jobs in the national economy that Plaintiff could perform (Dkt.

14 at 16). However, the ALJ specifically imposed the limitation of light exertional work in her

hypothetical to the VE. (T 307) The VE testified that the hypothetical person could perform one job,

small parts assembler. (T 308) The ALJ then posed the same hypothetical to the VE but allowed for

a medium exertional work residual functional capacity. (Id.) The VE testified that the jobs of hand-

packer and cleaner/janitor would also be available to the hypothetical claimant. (T 309)

A VE's testimony constitutes substantial evidence if the ALJ poses a hypothetical question

that comprises all of the claimant's impairments. Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir.

2002). The ALJ properly relied on the VE's opinion because the hypotheticals posed encompassed

all of Plaintiff's impairments. (T 307-08) The first hypothetical accurately reflected Plaintiff's

impairments and a residual functional capacity for light exertional work. Because the VE testified

that Plaintiff could do other work as a small parts assembler, the Commissioner met the burden of

proving that Plaintiff could perform other work.[8] Plaintiff's argument that the ALJ's inclusion of

---

[8] The Regulations provide that at the fifth step of the sequential evaluation process, the Commissioner is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's] residual functional capacity and vocational factors." 20 C.F.R. § 416.960(c). The ALJ, not the VE, determines whether a specific number of jobs constitutes a significant number. Brooks v. Barnhart, 133 Fed. Appx. 669, 670 (11th Cir. 2005) (citing 20 C.F.R. § 404.1512(g)). The VE testified that 3,400 small parts assembler jobs were available in the area in which Plaintiff resides. (T 308) Accordingly, even though the VE testified as to only one job that Plaintiff could perform with a light exertional work limitation, the court finds that the ALJ did not err in finding that Plaintiff could do other work that exists in significant numbers in the national economy. Cf. Allen v. Bowen, 816 F.2d

carpal tunnel syndrome would have eliminated any light work that Plaintiff could do is without merit; as discussed previously, the medical evidence does not support a finding of carpal tunnel syndrome.[9]

The court finds that the ALJ's written decision reflects that she considered all of the impairments raised by Plaintiff that are supported by medical evidence in the record. The ALJ found that Plaintiff had impairments that "are *in combination* considered 'severe' based on the requirements" in the Regulations  but that the impairments "do not meet or medically equal one fo the Listing impairments in Appendix 1, Subpart P, Regulation No. 4." (T 30) (emphasis added) The ALJ also considered the impairments "in combination" in the body of her decision. (T 23) This language has been held sufficient to discharge the Commissioner's obligation to consider impairments in combination. See Wheeler v. Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986) (ALJ's finding that a claimant is not suffering from an impairment or a combination of impairments of sufficient severity to prevent substantial gainful activity for a period of at least twelve consecutive months is sufficient to signify that combined effect of impairments was properly considered). Accordingly, Plaintiff's argument that the ALJ failed to consider his impairments in combination

---

600, 602 (11th Cir. 1987) (174 small appliance repairman jobs available in the area in which claimant lived was sufficient quantity of jobs to establish the existence of work in significant numbers).

[9] Plaintiff also argues that the ALJ, in questioning the VE, did not fully describe the restrictions resulting from the impairments that she found to exist or fully discuss Plaintiff's low back impairment which required a sit/stand option (Dkt. 14 at 17). However, Plaintiff cites no objective medical evidence which mandated a sit/stand option. Further, none of the medical records contain any evidence of work-related capacities or limitations. Therefore, the court finds no error in the ALJ's questioning of the VE.

is without merit.[10]

**B.**      Plaintiff also argues that remand is required under sentence six of 42 U.S.C. § 405(g) due

to the presentation of new evidence from Mease Dunedin Hospital that includes medical records of

Plaintiff's emergency room treatment in September 2004 for neck, back, and left shoulder pain. (T

261-62) Plaintiff allegedly submitted the new evidence to the ALJ on the day of the hearing and

resubmitted the evidence to the Appeals Council after the ALJ rendered her decision denying

benefits. The Appeals Council considered the evidence and denied review. (T 8)

Plaintiff argues that the medical records evidence a continued spinal impairment. The

September 22, 2004 emergency room report states that Plaintiff was in "acute discomfort." (T 261)

The report listed Plaintiff's neck condition as "[s]upple with diffuse vertebral and paravertebral

tenderness with spasm and decreased range of motion second to the pain." (Id.) In addition, the

emergency room physician found "positive thoracic vertebral, paravertebral tenderness with spasm

and spasm going to the left trapezius and deltoid muscles with decreased range of motion to the left

shoulder." (Id.) However, Plaintiff's extremities presented "[w]ith full range of motion," and spinal

x-rays were negative for fracture or subluxation. (Id.) The records note that Plaintiff was "able to

move without difficulty," and Plaintiff was treated with medication and discharged. (Id.)

Both parties cite the standard for remand for consideration of new evidence under sentence

six of the Act. To obtain a "sentence six" remand, a claimant must establish that: (1) there is new,

---

[10] Plaintiff also impliedly argues that he challenges the ALJ's credibility determination (Dkt. 14 at 15, 17). Although he articulates the Eleventh Circuit pain standard for subjective complaints, Plaintiff does not develop an argument about the ALJ's credibility determination. Notwithstanding, the court finds no error in the ALJ's credibility assessment. The ALJ thoroughly discussed her reasons for finding Plaintiff not wholly credible (T 28) and the ALJ's articulated reasons are sufficient to support her finding. See Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (ALJ's findings must explicitly and adequately set out reasons for discrediting a claimant's testimony).

non-cumulative evidence; (2) the evidence is material in that it is relevant and probative so that there

is a reasonable possibility that it would change the administrative results; and (3) there is good cause

for failure to submit the evidence at the administrative level. <u>Cannon v. Bowen</u>, 858 F.2d 1541,

1546 (11th Cir. 1988) (internal citations and quotations omitted).

However, a sentence six remand is proper only when new and material evidence that was not

incorporated into the administrative record comes before the district court. In <u>Ingram v.</u>

<u>Commissioner of Social Security</u>, ___ F.3d ___, No. 06-14602, 2007 WL 2385076, *13 (11th Cir.

Aug. 23, 2007), the Eleventh Circuit clarified that "[s]entence six allows the district court to remand

to the Commissioner to consider previously unavailable evidence; it does not grant a district court

the power to remand for reconsideration of evidence previously submitted to the Appeals Council."

Plaintiff concedes that the emergency room records existed at the time of the December 21, 2005

administrative hearing (Dkt. 14 at 18). Plaintiff states that he received updated medical evidence

from Mease Hospital immediately after the hearing and fails to explain why the evidence was not

submitted to the ALJ at the administrative hearing. The emergency room records were then properly

submitted to the Appeals Council, which considered and incorporated them into the administrative

record. (T 8) Therefore, the September 2004 emergency room records fail to meet the criteria for

a sentence six remand. <u>See</u> <u>Ingram</u>, 2007 WL 2385076 at *13.

Further, in this case, Plaintiff does not seem to appeal the Appeals Council's decision to deny

review; instead, Plaintiff appeals only the ALJ's decision to deny benefits (Dkts. 1, 14). When the

Appeals Council has denied review after considering new evidence, and a claimant challenges the

ALJ's decision denying benefits but not the Appeals Council's decision denying review, this court

need not consider the new evidence submitted to the Appeals Council but rather, only the evidence

actually presented to the ALJ. <u>See</u> <u>Ingram</u>, 2007 WL 2385076 at *8-11 (explaining and reconciling

12

the holdings in <u>Falge v. Apfel</u>, 150 F.3d 1320 (11th Cir. 1998), <u>cert. denied</u>, 525 U.S. 1124 (1999)

and <u>Keeton v. Dept. of Health & Human Svcs.</u>, 21 F.3d 1064 (11th Cir. 1994)). Accordingly, this

court considers, under sentence four, whether the ALJ's decision to deny benefits is supported by

substantial evidence in the record before the ALJ at the time of the decision.[11]

The record before the ALJ contains substantial evidence to support a denial of benefits. In

his opinion, the ALJ thoroughly discussed Plaintiff's medical documentation including his range of

motion in the spine, neurological defects of the upper or lower extremities, degenerative disc

disease, and December 2003 lumbar spine MRI scan. (T 24)  The ALJ also discussed a December

2003 spinal examination by Dr. Bresser (T 155-60)  in which Dr. Besser's detailed clinical findings

were essentially negative or normal "beyond tenderness and limitation of motion . . . , low back pain

(not leg pain) . . . , and mild swelling, tenderness, and laxity in the left knee without effusion or

anterior draw sign abnormality." (T 28, 155-60) Similar diagnoses were reached after physical

examinations by Dr. Vlahos (T 197-201) and Dr. Patrick (T 216-17) in February and June 2004,

respectively. In addition to her discussion of Plaintiff's physical impairments, the ALJ thoroughly

discussed the medical evidence relating to Plaintiff's mental impairments. (T 24-27)

Further, the ALJ noted giving Plaintiff the benefit of the doubt with respect to Plaintiff's

subjective complaints of pain because they were only minimally supported by the objective medical

---

[11] Had Plaintiff alleged that the Appeals Council failed to conduct a meaningful review of her case before it affirmed the ALJ's decision, this court would consider whether the new evidence before the Appeals Council constituted the basis for a sentence four remand. As explained in <u>Ingram</u>, "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." 2007 WL 2385076 at *6. However, <u>Ingram</u> clarified that for a federal court to review under sentence four a complaint that the Appeals Council erroneously denied review after considering new and material evidence, a claimant must specifically challenge the Appeals Council's decision to admit new evidence and deny review. <u>Id.</u> at 8-11.

findings. (T 28-29)

Plaintiff fails to show that substantial evidence does not support the ALJ's decision.

### III.

The ALJ's decision is supported by substantial evidence and the proper legal principles. The decision of the Commissioner denying Plaintiff's application for DIB and SSI payments is therefore affirmed.

Accordingly and upon consideration, it is **ORDERED AND ADJUDGED** that:

(1)     the decision of the Commissioner is **AFFIRMED** and this case is **DISMISSED**, with each party to bear its own costs and expenses; and

(2)     the Clerk of Court shall enter final judgment in favor of Defendant consistent with 42 U.S.C. §§ 405(g) and 1383(c)(3).

**DONE AND ORDERED** in Tampa, Florida this 24th day of September 2007.


ELIZABETH A JENKINS
United States Magistrate Judge

14